IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| ANILA CHINTAGUNTA § | |
| § | |
| V. § | CIVIL ACTION NO. 4:25-CV-806 |
| § | |
| JOHN PETER SMITH HOSPITAL, § | |
| ET AL. § | |

### AMENDED[1] FINDINGS, CONCLUSION, AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Pending before the Court are the following two motions: (1) Defendants Tarrant County Hospital District d/b/a John Peter Smith Hospital ("JPS") and Karen Duncan ("Duncan")'s Motion to Dismiss Plaintiff's Second Amended Complaint ("JPS and Duncan's Motion to Dismiss") [doc. 16], filed September 8, 2025, and (2) Defendants University of North Texas Health Science Center—Texas College of Osteopathic Medicine ("UNTHSC-TCOM"), Ken Paxton ("Paxton"), and Lisa Nash ("Nash")'s Motion to Dismiss Plaintiff's Second Amended Complaint ("UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss") [doc. 18], filed September 18, 2025. Having carefully considered the motions, responses, replies, and Plaintiff Anila Chintagunta ("Chintagunta")'s Second Amended Complaint, the Court **RECOMMENDS** that both motions to dismiss be **GRANTED** for the reasons set forth below.

### I.     BACKGROUND

#### A.     Relevant Facts

On July 29, 2025, Chintagunta, proceeding *pro se*, filed this suit against multiple Defendants, including JPS and the Texas College of Osteopathic Medicine ("TCOM"). (Plaintiff's

---

[1] This FCR is amended to correct several omissions in the first paragraph of the order and an incorrect reference to a footnote.

1

Original Complaint at 2.)[2]  In her Second Amended Complaint [doc. 14] filed on August 26, 2025, Chintagunta, a former medical student at TCOM, lists UNTHSC-TCOM, JPS, Duncan, Paxton, and Nash as Defendants and alleges that that UNTHSC-TCOM and JPS violated her constitutional rights.  (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl") at 1-10; *see also* Plaintiff's Opposition to Defendants JPS and Duncan's Motion to Dismiss ("Pl.'s Resp. to JPS and Duncan") [doc. 19] at 2; Plaintiff's Opposition to Defendants UNTHSC-TCOM, Paxton, and Nash's Motion to Dismiss ("Pl.'s Resp. to UNTHSC-TCOM, Paxton, and Nash") [doc. 27] at 3.)[3] As to JPS, Chintagunta alleges, *inter alia*, that JPS personnel wrongfully (1) accused her of disrespecting patients, (2) mischaracterized her attendance in clinical rotations, (3) slandered her medical aptitude, (4) disparaged her professional attitude in front of other students, (5) claimed she visited patients while testing positive for COVID, (6) touched her upper body[4] without consent, and (7) evaluated her performance as "below expected."  (Pl.'s Sec. Am. Compl. at 6-9.)  As to UNTHSC-TCOM, Chintagunta asserts, *inter alia*, that UNTHSC-TCOM personnel (1) accused her of acting unprofessionally, (2) treated her poorly and differently from other students, (3) provided her with incorrect information or withheld information that she needed to be successful in the medical program, and (4) eventually dismissed her from the UNTHSC-TCOM medical

---

[2] In her Original Complaint [doc. 1], Plaintiff filed suit against over thirty-five Defendants. On July 30, 2025, Plaintiff filed an Amended Complaint [doc. 9].  On August 7, 2025, Chintagunta filed an "Updated Defendants' List" [doc. 10] in which she listed only two Defendants—TCOM and JPS.  Thereafter, on August 12, 2025, the Court ordered Chintagunta to file a Second Amended Complaint, requiring her to "clearly specify each Defendant that she is suing . . . and indicate what claim(s) she is asserting against each Defendant" [doc. 11].

[3] All citations to the page numbers of any documents filed in this case refer to the page numbers at the top of the page (and not the page numbers at the bottom of the page).

[4] When defining her upper body, Chintagunta specifically identified her shoulders, wrists, hands, arms, upper body, and back.  (Pl.'s Sec. Am. Compl. at 7.)

school program. (*Id*. at 2-6.) Chintagunta seeks monetary damages for personal injury, mental distress, discrimination, and punitive damages. (Pl.'s Sec. Am. Compl. at 10.)[5]

### B. JPS and Duncan's Motion to Dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6)

In their Motion to Dismiss, JPS and Duncan[6] argue that the claims against them should be dismissed because Chintagunta failed to (1) allege any claims related to Duncan, (2) state a viable claim under 42 U.S.C. § 1983, (3) articulate facts describing how JPS violated her constitutional rights, and (4) plead the required elements to establish governmental entity liability against JPS under *Monell*.[7] (JPS and Duncan's Motion to Dismiss ("JPS and Duncan's Mot. to Dismiss") at 1, 5-10.)[8] In support of their first contention, JPS and Duncan assert that, "[b]ecause Plaintiff failed to plead factual allegations against Dr. Duncan that would allow the [C]ourt to draw a reasonable inference that she is liable for any misconduct, Dr. Duncan should be dismissed from this case." (*Id.* at 8, 10-11.) As to Chintagunta's claims against JPS, the latter contends that, as a

---

[5] The Court notes that Plaintiff's Second Amended Complaint contains over 125 individually numbered sentences or paragraphs setting forth factual allegations. (*See* Pl's. Sec. Am. Compl. at 1-10.) However, the only Defendants referred to by name within these paragraphs are Defendants UNTHSC-TCOM and JPS. (Pl.'s Sec. Am. Compl. at 2-8.) In addition, the Plaintiff makes references to, *inter alia*, being called "autistic and inappropriate," having poor interpersonal skills, having "ADHD and issues," and being discriminated because of her race and (possibly) her disabilities. Plaintiff also, in a section at the end of her Second Amended Complaint titled "Relief Demanded," lists "Retaliation, Discrimination, Defamation, Harassment, Assault, Sexual Assault, Sexual Harassment, Fraud/Misrepresentation, Tortious Interference" and "being treated as less than students considered as Diversity, Equity, and Inclusion (no MCAT required for admission; child of prior illegal immigrants; Muslims; apparently, a student used illegal substances which UNTHSC-TCOM was aware of)." (Pl.'s Sec. Am. Compl. at 10.) However, as to any possible state-law claims, Plaintiff, as set forth in footnote 8, *infra*, specially states that she is not alleging any state-law claims. As to any other federal claims not discussed herein, Plaintiff fails to plead enough facts to state a claim that is plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[6] Duncan is the chief executive officer at JPS. (Pl.'s Sec. Am. Compl. at 10.)

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[8] The Court notes that JPS and Duncan also argue that, to the extent that Plaintiff asserts any state law claim against JPS, the Court should, *inter alia*, "decline supplemental jurisdiction in the event it dismisses Plaintiff's federal claims." (JPS and Duncan's Mot. to Dismiss at 7.) However, the Court finds, based on Plaintiff's response, that Plaintiff has not asserted any state-law claims against JPS or Duncan. (*See* Pl.'s Resp. to JPS and Duncan at 3 ("I am not pleading under state law" as "I filed a civil complaint in federal court.").)

local government entity, it "cannot be held liable merely because its employees allegedly violate[d] the Constitution." (*Id.* at 11 (citing *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)).) Specifically, JPS states:

> Section 1983 is the mechanism by which a plaintiff asserts alleged violation[s] of a constitutional right. Importantly, section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States constitution and federal statutes that it describes." . . .
>
> JPS is a governmental entity. . . . [As set forth in *Monell*,] [t]he standard for suing a local government under section 1983 is rigorous. In particular, *respondeat superior* [or vicarious] liability] is absolutely prohibited. . . . Rather, proof of municipal liability requires "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." Each of these elements is critical to a successful claim.
>
> "Allegations of an isolated incident are not sufficient." Moreover, "[t]he description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts."

(JPS and Duncan's Mot. to Dismiss at 11-12 (alteration in original) (footnote omitted) (citations omitted).)

Based on the above law, JPS asserts that Chintagunta's suit against JPS should be dismissed because "Plaintiff's complaint is devoid of any factual allegations demonstrating a constitutional violation." (*Id.* at 12.) JPS further argues that, even if Chintagunta pled sufficient facts to establish an alleged constitutional violation, "such claims could only have been brought against JPS under the rubric of *Monell*." (*Id.* at 13.) Here, according to JPS, Chintagunta neither identified a specific policy or custom promulgated by a policymaker, nor described its relationship to the underlying constitutional violation. (*Id.* at 13-14.) JPS further claims that Chintagunta also failed to, alternatively, allege a persistent widespread practice of officials or employees that, while not authorized by officially adopted and promulgated policy, "is so common and well settled as to

constitute a custom that fairly represents municipal policy." (JPS and Duncan's Mot. to Dismiss at 13.) Finally, JPS contends that Chintagunta "fail[ed] to plead that the custom or policy in question was the moving force behind an underlying constitutional violation." (*Id.* at 14.)

### C. UNTHSC-TCOM, Paxton, and Nash's Motion to Dismiss under Rule 12(b)(1) and 12(b)(6)

In their motion to dismiss, UNTHSC-TCOM, Paxton, and Nash[9] argue that the claims against them should be dismissed because: (1) Defendants' sovereign immunity deprives the Court of subject-matter jurisdiction, (2) Plaintiff lacks standing to bring this suit, and (3) Plaintiff makes no factual allegations regarding Paxton or Nash. (UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss at 1-7.) As to UNTHSC-TCOM, Chintagunta, in her response, states that her Second Amended Complaint shows that "defendant's violated my constitutional rights, making my suit a federal question and admissible to court." (Plaintiff's Response to UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss at 3.) As to Nash, Chintagunta, in her response, states that she is suing Nash because Nash "is the Dean of UNTHSC-TCOM and was directly involved in claims #50-63" in Plaintiff's Second Amended Complaint. (Pl.'s Resp. to UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss at 2; *see* Pl.'s Sec. Am. Compl. at 5-6.) According to Plaintiff's Second Amended Complaint, factual allegations 50 to 63, all occurred "[a]t the Dean's Office on 10/31/2024" and resulted in Chintagunta being dismissed from the UNTHSC-TCOM medical school program. (Pl.'s Sec. Am. Compl. at 5-6.)

## II. STANDARD OF REVIEW

Pursuant to Rule 12(b)(1), a party may move to dismiss a case if the district court lacks jurisdiction over the subject matter. Fed. R. C. P. 12(b)(1). A court may properly dismiss a case for lack of subject matter jurisdiction "when the court lacks the statutory or constitutional power

---

[9] Nash is the dean of the UNTHSC-TCOM. (Pl.'s Sec. Am. Compl. at 9.)

5

to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494 (5th Cir. 2005). In resolving a Rule 12(b)(1) motion, a district court generally may "weigh the evidence and resolve factual disputes . . . to satisfy itself that it has the power to hear the case." *Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004).

"The Eleventh Amendment and sovereign immunity . . . restrict federal court jurisdiction." *Shipula v. Tex. Dep't of Fam. and Protective Servs.*, No. H-10-3688, 2011 WL 1882521, at *4 (S.D. Tex. May 17, 2011) (footnote omitted). "The Eleventh Amendment prohibits a private citizen from bringing suit against a state in federal court unless the state consents or Congress has clearly and validly abrogated the state's sovereign immunity." *Id*. (internal quotation marks and citations omitted). "A suit against a state agency or department is considered to be a suit against the state under the Eleventh Amendment."[10] *Shipula*, 2011 WL 1882521, at *4. "The immunity from suit is not avoided by suing state employees in their official capacity because the claim remains one against the state treasury." *Paskauskiene v. Univ. of N. Tex. Health Science Ctr.*, No. 4:05-CV-501-Y, 2006 WL 3372854, at *1 (N.D. Tex. Nov. 20, 2006). "Thus, it makes no difference if the action is brought against the state directly, or indirectly against subordinate agencies or officeholders operating in their official capacities: immunity applies unless waived by the state or Congress." *Id.*

Rule 12(b)(6) authorizes dismissal of a complaint that fails to "state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a complaint must allege specific, non-conclusory facts that "raise a right to relief above the speculative level." *Bell Atl.*

---

[10] In addition, "neither the states, nor state agencies, nor state officials sued in their official capacity are amenable to suit under 42 U.S.C. § 1983 because they are not persons within the meaning of that statute." *Shipula*, 2011 WL 1882521, at *4. The only exception, which is known as the *Ex Parte Young* exception and is not applicable here, involves suits against a state official in his official capacity where a Plaintiff is seeking injunctive or declaratory relief. *See Thomas v. State*, 294 F. Supp. 3d 576, 592 (N.D. Tex. 2018).

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). In essence, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Although the Court need not credit conclusory allegations or "formulaic recitation[s]" of a claim's elements, it must accept all well-plead facts as true, viewing them in the light most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *see Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016).

For a claim to be plausible, the alleged facts must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court, however, will not strain to find such inferences where the pleading consists solely of legal conclusions and unwarranted deductions. *See R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (citations omitted). As the Supreme Court noted in *Iqbal*, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (citations omitted). In sum, when plaintiffs fail to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 678.

In ruling on a Rule 12(b)(6) motion, the court assesses whether the plaintiff has stated a legally cognizable claim, not the likelihood of success. *See U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.*, 355 F.3d 370, 376 (5th Cir. 2004). For purposes of a defendant's motion to dismiss, the plaintiff bears no burden of proof. *See Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 751 (N.D. Tex. 2013). Rather, the issue is whether the complaint itself states a claim upon which

relief can be granted. *Id.* Generally, a court may only rely on the complaint and its proper attachments. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). In rendering a decision on a 12(b)(6) motion, the court cannot look beyond the pleadings. *See Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). The pleadings include the complaint and any documents attached to it. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Additionally, the court may consider "'[d]ocuments that a defendant attaches to a motion to dismiss . . . if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claims.'" *Id.* at 498-99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) (alterations in original)). An amended complaint entirely supersedes and takes the place of an original pleading, rendering the original complaint of no legal effect. *See Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 740 (5th Cir. 1986).

Section 1983 "creates a private right of action for redressing the violation of federal law by those acting under color of state law." *Colson v. Grohman*, 174 F.3d 498, 504 n.2 (5th Cir. 1999) (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984)); *see* 42 U.S.C. § 1983. "Rather than creating substantive rights, § 1983 simply provides a remedy for the rights that it designates." *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (internal quotation marks and citations omitted). "Thus, an underlying constitutional or statutory violation is a predicate to liability under § 1983." *Id*.

Municipalities and other local government entities, such as JPS, are considered "persons" susceptible to suit under Section 1983. *See Piotrowski*, 237 F.3d at 578; *Monell*, 436 U.S. at 690; *see also Morgan v. City of Fort Worth, Tex.*, No. 4:13-CV-004-Y, 4:13-CV-017-Y, 2013 WL 3196580, at *2-3 (N.D. Tex. June 25, 2013) (evaluating whether Plaintiff had stated a *Monell* claim under Section 1983 against JPS). Municipalities or other local government entities, however,

cannot be liable for damages under Section 1983 without some predicate constitutional injury at the hands of a state employee. *See City of L.A. v. Heller*, 475 U.S. 796, 798-99 (1986). In other words, municipal liability cannot be sustained under a theory of vicarious liability or *respondeat superior*. *See Monell*, 436 U.S. at 691. For liability to attach, there must be "(1) an official policy (or custom), of which (2) a [policymaker] can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (quoting *Piotrowski*, 237 F.3d at 578)). The policy or custom can be pleaded in two ways. *Id.* "First, a plaintiff may point to a policy statement formally announced by an official policymaker." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 168 (5th Cir. 2010). Alternatively, the plaintiff may offer evidence of a "persistent widespread practice of [county] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.* at 169.

## II.    LEGAL ANALYSIS

### A.    Claims Against Duncan and Paxton

As noted by all Defendants, Chintagunta does not make any direct allegations against Paxton or Duncan in her Second Amended Complaint. (Pl.'s Sec. Am. Compl. at 9-10; *see* JPS and Duncan's Mot. to Dismiss at 8, 10-11; UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss at 1-2, 6-7.) As to Duncan and Paxton, Chintagunta acknowledges, explicitly or implicitly, that she only named them as Defendants to ensure proper service on JPS. (*See* Pl.'s Resp. to JPS and Duncan at 3; Pl.'s Resp. to UNTHSC-TCOM, Paxton, and Nash at 2.) As noted by Defendants, Chintagunta appears to be confusing the rules that govern service of process with those that assess a Defendant's liability. (JPS and Duncan's Mot. to Dismiss at 8, 10-11; UNTHSC-TCOM, Paxton,

9

and Nash's Mot. to Dismiss at 1-2, 6-7)  While Duncan and Paxton may be proper agents to effect service on UNTHSC-TCOM and JPS, Chintagunta does not allege any specific facts against Duncan or Paxton that would lead this Court to reasonably infer that they may be liable for any alleged misconduct.  (*See* Pl.'s Sec. Am. Compl. at 10.)  As a result, the Court **FINDS and CONCLUDES** that Chintagunta has failed to state a claim upon which relief can be granted against Duncan or Paxton.  Thus, the Court **RECOMMENDS** that, as to Duncan, JPS and Duncan's Motion to Dismiss be **GRANTED**, and, as to Paxton, NTHSC-TCOM, Paxton, and Nash's Motion to Dismiss be **GRANTED**.  The Court further **RECOMMENDS** that all claims against Duncan and Paxton be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

B.   **Claims Against JPS**

As set forth above, for liability to attach to JPS, which is a local government entity,[11] Plaintiff's Second Amended Complaint must contain allegations of "(1) an official policy (or custom), of which (2) a [policymaker] can be charged with actual or constructive knowledge, and (3) a constitutional violation whose moving force is that policy (or custom)." *Pineda*, 291 F.3d at 328 (internal quotation marks omitted).  Even assuming that Chintagunta has alleged sufficient facts in her Second Amended Complaint to establish that specific individuals from JPS violated her constitutional rights, JPS cannot be liable for the unconstitutional conduct that its employees solely engaged in.  *See Piotrowski*, 237 F.3d at 578.  Rather, for JPS to be liable, "the unconstitutional conduct must be directly attributable to [JPS] through some sort of official action or imprimatur." *Id.*; *see also Monell*, 436 U.S. at 694.  Because Chintagunta failed to allege in her

---

[11] *See Olushola v. Tarrant Cnty. Hosp. Dist.*, No. 22-cv-0704-P, 2023 WL 3151076, at *2 (N.D. Tex. Apr. 28, 2023) ("[T]he Tarrant County Hospital District is a state actor, requiring at lease some incorporation of § 1983 from within the pleading for the claim to remain procedurally viable.")

Second Amended Complaint any facts that identify a policy maker, an official policy or widespread custom, and the moving force of the policy, the Court concludes that nothing furnishes a basis for finding that JPS maintained a widespread policy or custom that caused Chintagunta's alleged constitutional injuries.  *See Monell*, 436 U.S. at 694.

In her response, Chintagunta avers that neither the Federal Rules of Civil Procedure nor the Local Rules of Civil Procedure mention *Monell* and its three elements.  (*See* Pl.'s Resp. to JPS and Duncan at 3.)  The Court, however, disagrees that Rule 8(a) eliminates the requirement to plead facts establishing each legal element necessary to state a claim under Section 1983, which is the governing law that permits Chintagunta to seek damages for alleged constitutional deprivations from JPS.  *See* Fed. R. Civ. 8(a)(2).  On the contrary, Rule 8(a)(2) requires complaints to include a "short and plain statement of the claim *showing* that the pleader is *entitled to relief*."  Fed. R. Civ. P. 8(a)(2) (emphasis added).  Thus, for Chintagunta to state a claim for relief against JPS pursuant to Section 1983, her Second Amended Complaint must set forth facts establishing the three essential elements of municipal liability.  *See Monell*, 436 U.S. at 694; *see also Piotrowski*, 237 F.3d at 578.  While the allegations made by Chintagunta may be personally distressing for her, Chintagunta wholly fails to allege facts that meet the threshold for stating a claim against JPS for governmental liability.  *See Monell*, 436 U.S. at 694.  Consequently, the Court **FINDS and CONCLUDES** that Chintagunta has failed to state a claim under Section 1983 against JPS.  Thus, the Court **RECOMMENDS** that Defendants' JPS and Duncan's Motion to Dismiss on this issue be **GRANTED** and all claims against JPS be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

### C. Claims Against UNTHSC-TCOM

As set forth above, UNTHSC-TCOM claims that sovereign immunity deprives this Court of subject-matter jurisdiction to hear Plaintiff's claims against it under Section 1983. As UNTHSC-TCOM is a state agency,[12] it is immune from suit under the Eleventh Amendment unless "the state consents or Congress has clearly and validly abrogated the state's sovereign immunity." *Shipula*, 2011 WL 1882521, at *4. Plaintiff does not allege that Texas has waived immunity as to UNTHSC-TCOM and "it is clear that Congress did not intend to abrogate a state's Eleventh-Amendment immunity under" Section 1983. *Paskauskiene*, 2006 WL 3372854, at 2. As a result, Plaintiff's claims against UNTHSC-TCOM under Section 1983 fail for lack of subject matter jurisdiction. *Id*; *see Grant v. Tex. State Att'y Gen. Open Gov't Recs. and Consumer Prot. Div.*, No. 5-21-CV-00761-FB-RBF, 2021 WL 8055684, at 4 (W.D. Tex. Nov. 16, 2021), *rep. and rec. adopted*, 2021 WL 8055678 (W.D. Tex. Dec. 30, 2021); *J.A. b/n/f Alvarez v. Tex. Educ. Agency*, No. 1:19-CV-921-RP, 2020 WL 3411380, at *7 (W.D. Tex. June 21, 2020) (stating that the Texas Education Agency, as an agency of the State of Texas, was immune from Plaintiffs' constitutional claims under 42 U.S.C. § 1983). Consequently, the Court **FINDS and CONCLUDES** that UNTHSC-TCOM is entitled to sovereign immunity. Thus, the Court **RECOMMENDS** that Defendants UNTHSC-TCOM, Paxton, and Nash's Motion to Dismiss on this issue be **GRANTED** and all claims against UNTHSC-TCOM be **DISMISSED WITHOUT PREJUDICE** for lack of subject-matter jurisdiction.

---

[12] *See Paskauskiene*, 2006 WL 3372854, at *2 (finding that, since "UNTHSC is a state agency," Plaintiff's claims for damages and injunctive relief under Section 1983 were barred by the Eleventh Amendment). *See also Kline v. N. Tex. State Univ.*, 782 F.2d 1229, 1230 n.1 (5th Cir. Feb. 14, 1986) ("The district court found that both TCOM and [North Texas State University] were merely instrumentalities of the State of Texas, and thus [Plaintiff] was barred from suing the institutions [under Section 1983] by the eleventh amendment.").

### D. Claims Against Nash

As to Nash, Chintagunta, as set forth above, states in her response that she is suing Nash because Nash "is the Dean of UNTHSC-TCOM and was directly involved in claims #50-63" in Plaintiff's Second Amended Complaint.  (Pl.'s Resp. to UNTHSC-TCOM, Paxton, and Nash's Mot. to Dismiss at 2; *see* Pl.'s Sec. Am. Compl. at 5-6.)  A review of these factual allegations show that Chintagunta is claiming that Nash, as the Dean at UNTHSC-TCOM, in essence, dismissed Chintagunta on October 31, 2024, from the UNTHSC-TCOM medical school program because of Chintagunta's poor academic performance, poor behavior, and failure to successfully perform in remediation opportunities.  (Pl.'s Sec. Am. Compl. at 5-6.)  While Chintagunta does not specify, it appears that she is only suing Nash in Nash's official capacity[13] because Chintagunta states in her Second Amended Complaint that she included Nash as a Defendant because it was "[r]equired by Federal Rules of Civil Procedure to follow state's rules which say to serve on a representative of the agency when suing an institution created by the government." (Pl.'s Sec. Am. Compl. at 10.)  In addition, Chintagunta does not specifically refer to Nash by name with regard to any of the factual allegations associated with the "Dean's Office" in her Second Amended Complaint. (*Id.* at 5-6.)

As noted above, state employees, such as Nash, who are sued in their official capacity are also, like UNTHSC-TCOM, entitled to immunity from suit because the "claim remains one against

---

[13] "Personal-capacity suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law." *Orlando v. Dir., John Peter Smith Medical*, No. 4:23-cv-876-O, 2024 WL 3378728, at *5 (N.D. Tex. July 11, 2024) (internal quotation marks and citations omitted) (alterations in original).  "Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Id.*  "When a plaintiff does not specify whether an official is sued in his official or individual capacity, courts look to the 'course of the proceedings' in a case to determine 'the nature of liability sought to be imposed.'" *Harmon v. Dallas Cnty., Tex.*, 294 F. Supp. 3d 548, 569 n.6 (N.D. Tex. 2018) (quoting *United States ex rel. Adrian v. Regents of Univ. of Cal.*, 363 F.3d 398, 402-03 (5th Cir. 2004).  "Factors relevant to the inquiry include the substance of the complaint, the nature of relief sought, and statements in dispositive motions and responses." *Harmon*, 294 F. Supp. 3d at 569 n.6.

the state treasury." *Paskauskiene*, 2006 WL 3372854, at *1. "Thus, it makes no difference if the action is brought against the state directly or indirectly against subordinate agencies or officeholders operating in their official capacities: immunity applies unless waived by the state or Congress."[14] *Id.* Consequently, the Court **FINDS and CONCLUDES** that Nash is entitled to sovereign immunity. Thus, the Court **RECOMMENDS** that Defendant UNTHSC-TCOM, Paxton, and Nash's Motion to Dismiss on this issue be **GRANTED** and all claim against Nash be **DISMISSED WITHOUT PREJUDICE**.[15]

### NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest

---

[14] Even assuming that Nash was sued in her individual capacity, Chintagunta's complaint is devoid of any factual allegations against Nash (or "the Dean's Office") that state a claim for a constitutional violation. (*See* Pl.'s Sec. Am. Compl. at 5-6.) By way of example, if Chintagunta was attempting to allege a Section 1983 violation of her due process rights under the Fourteenth Amendment, she must plead facts sufficient to show that an individual sued in his or her individual capacity engaged in actions that caused Plaintiff to be dismissed without, at least "some meaningful notice and an opportunity to respond." *Shah v. Univ. of Tex. Sw. Med. Sch.*, 129 F. Supp. 3d 480, 498 (N.D. Tex. 2015).

[15] The Court notes that, because dismissals are disfavored, a court should generally grant a *pro-se* party every reasonable opportunity to amend. *See, e.g.*, *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998). In this case, however, Plaintiff has had the opportunity to file a total of three complaints. Consequently, the Court finds and concludes that Chintagunta has alleged her best case and further amendment would be futile.

injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).

## **ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until December 1, 2025, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED November 18, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE